IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 13-CR-30212-DRH |
| | ) | |
| ANTHONY T. MOORE, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S MOTION IN LIMINE

Comes now the United States and for its Motion in Limine states as follows:

Defendant is charged in a one-count Indictment with Hobbs Act Robbery in violation of 18 U.S.C. Section 1951. The robbery occurred on December 17, 2012. The Government anticipates that at trial it will present evidence that, after the robbery with which he is charged, Defendant: (a) threatened witness JB with a firearm to discourage her from discussing the charged robbery (JB was 15 years old at the time); and (b) attempted to kill JB with a firearm, to prevent her from discussing the robbery.

The Government's position is that testimony concerning these two events constitutes evidence of Defendant's consciousness of guilt and that such evidence is relevant and admissible, independent of Rule 404(b) of the Federal Rules of Evidence. *United States v. Mokol*, 646 F.3d 479, 483 (7th Cir. 2011) (citing *United States v. Johnson*, 624 F.3d 815, 820-21 (7th Cir. 2010); *United States v. Calabrese*, 572 F.3d 362, 368 (7th Cir. 2009); *United States v. Miller*, 276 F.3d 370, 373 (7th Cir. 2002); and *United States v. Balzano*, 916 F.2d 1273, 1281 (7th Cir. 1990). The Government therefore seeks an order permitting the Government to introduce such testimony.

**FACTS**

The Government has charged Defendant with Hobbs Act Robbery of a United Parcel Service (UPS) driver, in violation of 18 U.S.C. Section 1951. The testimony will show that the driver, having stopped to deliver a package in East St. Louis, was approached by Defendant, who was armed with a revolver with a brown wooden handle. Defendant forced the driver at gunpoint to drive to two separate locations, where Defendant and others unloaded UPS boxes to one or more other vehicles. The robbery occurred on December 17, 2012.

Testimony will also show that some of these packages were subsequently taken to the residence of Victoria Walker, who was Defendant Moore's girlfriend.

Testimony will also reveal that some of the stolen packages contained what JB described as "Nubian" hair extensions. JB will testify that, on or about December 19, 2012, Victoria Walker called JB and offered to sell JB packages of such hair extensions for $5.00 apiece (JB believes the value of each package to be approximately $100). JB went to Walker's residence, where she observed numerous hair extensions and other items that she later came to believe were items from the UPS robbery. JB purchased two packages of hair extensions from Walker. JB also observed numerous shipping boxes at Walker's residence. JB also learned of television news coverage of the UPS truck robbery.

Shortly after the purchase, JB and Walker went to a local shop to buy "hair glue" with which to fasten the hair extensions. Defendant Anthony Moore was also present at the shop, as was Moore's cousin. When Moore saw a UPS truck drive by the shop, JB heard Moore comment, "Round Two."

Later that same day, as Moore, Walker, and JB rode together in a vehicle, they saw a Fed-Ex truck drive by; JB heard Moore say, "That's the truck I really want."

From these events, JB concluded that Moore had robbed the UPS truck driver.

Moore learned that rumors were being spread that he was the person responsible for the robbery. He believed that JB was responsible for spreading the rumors.

JB also overheard Walker and Defendant argue over which of the two of them could sell which merchandise that JB had seen at Walker's residence.

On the afternoon of December 19, 2012, JB and Defendant were in Walker's residence when Walker called from her place of employment. Defendant became agitated when Walker made reference to the robbery – Defendant told Walker that she should not be talking about the robbery while she was at work. Shortly after this call, as Defendant and JB walked to a Metro stop, Defendant pulled out a silver revolver with a wooden handle and commented to JB that he should shoot her.

On December 20, 2012, between 2:00 and 3:00 a.m., Walker went to JB's residence and convinced JB to come out and join her to smoke marijuana. JB got into Walker's van. Walker drove under a viaduct, drove a little further, then returned to a place under the viaduct. At this point, Defendant appeared. Walker stopped the van. As Defendant tried to pull JB from the van, he said, "I heard you running around here snitching, so, bitch, I'm fittin' to kill you." Defendant succeeded in pulling JB from the van, then threw her into a ditch, and then fired at JB three times with a revolver with a brown handle. The first shot missed. The second and third shots hit JB in the back and in the head. Fortunately, JB survived and will testify at trial.

Defendant was charged with and was convicted of Attempted First Degree Murder and two counts of Aggravated Battery/Discharge of Firearm, in violation of 720 ILCS Sections 5.0/8-4(a) and 5.0/9-1(a)(1), following jury trial held on July 23-24, 2013, in St. Clair County Case No. 12CF1826 (Defendant was not charged by the state with the UPS robbery, but was only charged

in connection with the attack on JB). JB testified in that trial concerning the shooting. Thus, the jury's guilty verdict established JB's credibility for purposes of the instant motion. Her trial testimony is attached as Exhibit 1 (the Government intends to introduce in the instant federal trial all matters contained therein).

Walker pled guilty to Aggravated Battery with Firearm, in violation of 720 ILCS Section 5.0/12-4.2(A)(1) on January 13, 2014.

## **ANALYSIS**

As stated in the introductory paragraph of this Motion, the above facts constitute evidence of Defendant's consciousness of guilt and are therefore relevant and admissible, independent of Rule 404(b). *United States v. Mokol*, 646 F.3d 479, 483 (7th Cir. 2011) (citing *United States v. Johnson*, 624 F.3d 815, 820-21 (7th Cir. 2010); *United States v. Calabrese*, 572 F.3d 362, 368 (7th Cir. 2009); *United States v. Miller*, 276 F.3d 370, 373 (7th Cir. 2002); and *United States v. Balzano*, 916 F.2d 1273, 1281 (7th Cir. 1990)).

In *Mokol*, the Seventh Circuit upheld the admissibility of a witness's testimony that Mokol had told the witness that anyone who informed on him would "'end up in ground.' This testimony fits comfortably within the widely recognized principle that a defendant's attempts to intimidate potential witnesses are probative of his consciousness of guilt. . . . Rule 404(b), restricting bad acts evidence, will ordinarily not keep such evidence from the jury." *Mokol*, 646 F.3d at 483.

In *Johnson*, cited in *Mokol*, the Seventh Circuit upheld the admission of recordings that contained coded threats. "The Government offered the recordings as evidence of Johnson's consciousness of guilt, which is an appropriate basis for admitting evidence." *Johnson*, 624 F.3d at 821.

*Calabrese*, also cited in *Mokol*, concerned three savage robberies of local businesses in Chicago. An informant named Frank wore a wire, which captured defendants' "whole conversation, including references to crime, death threats to Frank, and a few knocks so he wouldn't forget." 572 F.3d at 366. The Seventh Circuit held:

> Here, the trial court determined both that the conversation on the audio-tape was relevant and that, with the worst parts excised, its probative value was not substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403. A reasonable person could take that view. Relevance cannot be genuinely disputed; we have repeatedly observed that intimidation of a witness suggests consciousness of guilt . . . , and the inference holds true in this case.

*Id*. at 368.

In *United States v. Harmon*, 721 F.3d 877 (7th Circuit 2013), the defendant was charged in a superseding indictment with conspiracy to distribute marijuana, three counts of attempting to possess marijuana with intent to distribute, using a telephone to facilitate a drug-trafficking crime, attempting to kill a witness with intent to prevent him from testifying, and attempted intimidation of the same witness. *Id*. at 880. A jury found Harmon guilty of all counts except for the attempt to kill and the attempted intimidation. *Id*. at 881. The evidence of the attempt to kill and of attempted intimidation included (a) Witness Short's testimony that Harmon offered to pay Short to get rid of Witness Meadows; and (b) Witness Meadows' testimony that someone shot at him while he was driving, and the shots left two bullet holes in Meadows' vehicle. One issue that Harmon raised on appeal was that he was unfairly prejudiced by the court's granting the Government's motion for extension of time for trial so that it could gather evidence of the attempts to kill and intimidate. The Seventh Circuit rejected this argument, holding:

> "'[P]rejudice' is not caused by allowing the Government properly to strengthen its case, but rather by delays intended to hamper defendant's ability to present his defense." [citations omitted]. Evidence of intimidation of a witness raises an inference of consciousness of guilt which raises an inference of actual guilt. *See,*

5

> e.g., *Russell*,662 F.3d at 850; *Mokol*, 646 F.3d at 483. Thus, evidence of the attempted murder and witness intimidation counts was certainly relevant to the other charges against Harmon.

*Harmon*, 721 F.3d at 884. The Court went on to state: "To the extent that the evidence of attempted murder and witness intimidation impacted the jury's determination of the other counts, it is because such evidence was probative of Harmon's guilt." *Id.*

It is clear from these cases that the facts described above in the instant case are relevant because they are evidence of consciousness of guilt. Defendant Moore believed that JB was spreading word that Moore was responsible for the UPS truck robbery; he first intimidated her by threatening to shoot her; he then tried to kill her in order to silence her.

Although relevant, the evidence must also pass Rule 403 muster. Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

But, as the Seventh Circuit has stated: "Any probative evidence of prior convictions *will* be prejudicial; however, we must determine if it was *unfairly* prejudicial." *Jones*, 455 F.3d at 809 (7th Cir. 2006) (emphasis in original) (citing *United States v. Best,* 250 F.3d 1084, 1093) (7th Cir. 2001), and *United States v. Puckett*, 405 F.3d 589, 597 (7th Cir. 2005).

As the Supreme Court has observed, "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged. . . . So, the Committee Notes to Rule 403 explain, '"Unfair prejudice" within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an

6

emotional one.' Advisory Committee's Notes on Fed. Rule Evid. 403, 28 U.S.C. App. P. 860." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

The improper ground in *Old Chief*, the Court suggested, was "generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged (or worse, as calling for preventive conviction even if he should happen to be innocent momentarily)." 519 U.S. at 180-81.

Other relevant bad act evidence that risks a jury decision based on "passion or bias" and prior bad act evidence suggesting that a defendant is simply a bad person deserving punishment is also potentially excludable under Rule 403. *United States v. Rogers*, 587 F.3d 816, 822-23 (7th Cir. 2009).

Or, as another Seventh Circuit decision noted, "Evidence is unduly prejudicial if it creates a genuine risk that the emotions of the jury will be excited to irrational behavior, and the risk is disproportionate to the probative value of the offered evidence." *United States v. Loughry*, 660 F.3d 965, 974 (7th Cir. 2011) (reversing in case charging distribution of child pornography, where trial court allowed Government's introduction of videos from defendant's home computer showing girls forced to engage in sexual acts, and of adult males raping prepubescent girls, which were much more inflammatory than the child pornography for which he was charged with distribution).

In another case, the Seventh Circuit commented, "relevant evidence may be considered unfairly prejudicial when it has the capacity to lure the fact-finder into declaring guilt on a ground different from proof specific to the offense charged." *United States v. Kleibig*, 600 F.3d 700, 713 (7th Cir. 2010) (citing *United States v. Coleman*, 179 F.3d 1056, 1062 (7th Cir. 1999)). In *Kleibig*, the Seventh Circuit reversed a conviction for possession of an unregistered sawed-off

shotgun and an unregistered silencer because the trial court had allowed the introduction of evidence that Kleibig had security devices in his house, decorated his tree with CD's, kept numerous squirrel tails in his house, and possessed numerous firearms that were not illegal for him to possess. The Seventh Circuit explained that none of this evidence had anything to do with the elements of the charged crimes and was instead evidence that might demonstrate that Kleibig "appear to be an unbalanced man, an oddball, perhaps a survivalist or a gun nut. . . . This is all character evidence, which is generally inadmissible for the purpose of proving action in conformity with that character." *Id*. at 712. The Court then held that any slight relevance of the evidence was outweighed by the danger of unfair prejudice and confusion of the issues, and ruled that the trial judge abused his discretion when it concluded that the evidence was relevant to the issues of knowledge and intent in the case. *Id*. at 713-14.

Although *Rogers, Loughry, and Kleibig* each reversed trial court decisions that had permitted introduction of unfairly prejudicial evidence, they are helpful in providing interpretations of what constitutes unfairly prejudicial evidence. However, those cases are distinguishable from the instant case in that in each case, the unfairly prejudicial evidence involved activity that was extraneous to the charges against the respective defendants. But in the instant case, the threats and shooting of JB relate directly to the issue of Defendant Moore's consciousness of guilt for the charged offense. The threats and shooting do not invite the jury to convict on an improper basis. And the facts of the instant case are more similar to the above-cited cases of *Mokol*, *Johnson*, *Calabrese*, *Miller*, and *Balzano*, in each of which cases the threats and actions taken against witnesses were deemed to be evidence of consciousness of guilt that were not unfairly prejudicial under Rule 403.

In assessing the probative value of the evidence under Rule 403, the Court should assess all evidence to ensure that the particular evidence sought to be introduced is not substantially outweighed by the danger of unfair prejudice. *Loughry*, 660 F.3d at 971. The evidence at trial will initially focus on the UPS driver, who will describe the robbery itself. In summary, it is anticipated that he will testify that Defendant approached the driver's parked truck, pointed a gun at the driver, directed the driver to drive to a location in Washington Park; the driver complied. Defendant was in correspondence with others by cell phone as they drove. At the designated location, Defendant and others started to unload packages, but someone drove by, which apparently concerned the Defendant, and so the Defendant (again at gunpoint) directed the driver to drive the truck to a second location in Washington Park. In the second location, Defendant and others unloaded the packages from the truck, disabled the driver's cell phone, and fled.

The driver then drove to a location he considered safe, and from there was able to call UPS dispatch. Police were alerted.

However, it was not until Defendant's attack on JB on December 20, 2012, that police could link Defendant to the robbery. JB was easily able to identify Moore as her assailant because she had known him for at least two years, and she related other information to the police concerning the packages at Walker's residence, as well as defendant's statements about the "Number Two" UPS truck and the Fed-Ex truck.. Police then were able to create a photo-spread, which they showed to the UPS driver, who was able to identify Defendant in the photo spread.

Also, execution of a search warrant at Walker's residence allowed police to recover many packages that the Government anticipates will match UPS tracking of the packages. Anticipated testimony from a UPS employee will indicate that packages are traceable from senders in other

9

states to the specific truck driven by the victim UPS driver, which ultimately wound up at Walker's residence.

So JB's anticipated testimony about her attack is part of the overall investigation that helps tell the full story of this case, including how it was that police were led to identifying Moore as the perpetrator of the robbery. The driver and JB describe guns of a similar nature. The gun has not been recovered, but JB's testimony concerning the gun would corroborate the driver's description of the gun.

Evidence of the threats and the shooting are not unfairly prejudicial. The evidence constitutes evidence of Defendant's consciousness of guilt, which the jury should be allowed to hear.

Additionally, it should be noted that cautionary instructions given both at the time the evidence is introduced and in final instructions "'are effective in reducing or eliminating any possible unfair prejudice from the introduction of Rule 404(b) evidence.'" *United States v. Jones*, 455 F.3d 800, 809 (7th Cir. 2006) (quoting *United States v. Best*, 250 F.3d 1084, 1093 (7th Cir. 2001)). *See also United States v. Menzer*, 29 F.3d 1223, 1234 (7th Cir. 1994) (curative instructions minimized unfair prejudice in arson case where Government introduced evidence of prior child exploitation conviction). But see concurring opinion by Judge Easterbrook in *Jones* at 455 F.3d at 811-12 (7th Circuit Pattern Instruction 3.04 is a "good start," but "should be concrete so that a jury understands what it legitimately may do with the evidence").

WHEREFORE, the Government prays that the instant motion be granted and that the Court permit the Government to introduce evidence of Defendant's threats against JB and of the shooting of JB as evidence of Defendant's consciousness of guilt, and that the Court find that

such evidence is not unfairly prejudicial.  Additionally, the Government requests that the Court provide appropriate cautionary instructions as envisioned by *Jones*.

                Respectfully Submitted,

                STEPHEN R. WIGGINTON
                United States Attorney

                *s/Stephen B. Clark*
                STEPHEN B. CLARK
                Assistant United States Attorney
                Nine Executive Drive
                Fairview Heights, IL  62208
                Ph:  618-628-3700
                Fax:  618-628-3730
                Stephen.Clark@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 13-CR-30212-DRH |
| | ) | |
| ANTHONY T. MOORE, | ) | |
| | ) | |
| Defendant. | ) | |

**Certificate of Service**

I hereby certify that on May 16, 2014, I caused to be electronically filed Government's Motion In Limine with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

Thomas C. Gabel:  Thomas_Gabel@fd.org

                                                                                                             Respectfully Submitted,

                                                                                                             STEPHEN R. WIGGINTON
                                                                                                             United States Attorney

                                                                                                             *s/Stephen B. Clark*
                                                                                                             STEPHEN B. CLARK
                                                                                                             Assistant United States Attorney
                                                                                                             Nine Executive Drive
                                                                                                             Fairview Heights, IL  62208
                                                                                                             Ph:  618-628-3700
                                                                                                             Fax:  618-628-3730
                                                                                                             E-mail:  Stephen.Clark@usdoj.gov